**E.L. POWELL**

v.

**The UNITED STATES.**

No. 56–82T.

United States Claims Court.

Oct. 30, 1985.

Charles E. Anderson, Albuquerque, N.M., for plaintiff.

David Hickman, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., for defendant.

## OPINION

SETO, Judge.

In this tax case, plaintiff, Edgar L. Powell, seeks to recover a token payment of $100 in partial satisfaction of a one hundred percent (100%) penalty of $22,257.22 assessed against him under Section 6672 of the Internal Revenue Code of 1954, 26 U.S.C. § 6672. The government has counterclaimed for the balance of the assessment plus interest. The penalty was assessed because of plaintiff's alleged willful failure to collect and pay over income and Federal Insurance Contribution Act ("FICA") taxes withheld from the wages of the employees of United States Reading Lab, Inc. ("USRL") for the second quarter of 1977. For the reasons stated below, defendant is to recover on its counterclaim.

## FACTS

USRL was incorporated as a New Mexico corporation in 1976 by Douglas Scott, its owner and president. With its main office in Roswell, New Mexico, USRL provided speed reading courses throughout the United States. The corporation's office manager and bookkeeper was Mary Powell.

Other officers and directors of the company were Jim Owens and Dan Holst, both vice presidents. Owens was involved with advertising, while Holst coordinated the company's educational programs.

In late 1976, Mary Powell contacted the plaintiff suggesting that he invest in USRL. Plaintiff and Douglas Scott thereafter entered into negotiations that led to a

written agreement in December 1976 under which the plaintiff agreed to loan Scott and the corporation amounts totalling $98,000. In addition, plaintiff agreed to co-sign two notes for the corporation, procure a line of credit and obtain extensions on three notes. In return, Scott agreed to transfer ten percent (10%) of the corporate stock to Powell. Moreover, Scott agreed to assign a note for $62,000 from the company and have the company issue another note for $36,000. Scott further agreed to place the remaining 90% of USRL stock in escrow and have plaintiff elected as treasurer of the corporation, as well as to a seat on the Board of Directors. Finally, the agreement stated that plaintiff would be hired as comptroller of USRL and be compensated in the amount of $25,000 per year.

Throughout the first quarter of 1977, USRL generated sufficient cash flow to pay withholding taxes on a timely basis. From March 15 through April 15, 1977, plaintiff was in New Zealand and had little contact with USRL. Near the end of the first quarter, the USRL board of directors met and, in plaintiff's absence, changed the corporation's salary structure. Consequently, USRL began paying its salespeople a weekly salary instead of commissions, thereby resulting in a large increase in USRL's employment tax liability.

When plaintiff returned on April 15, 1977, USRL was experiencing financial difficulties which caused plaintiff to consult an attorney. In May, plaintiff and Mary Powell met with a bankruptcy attorney to whom they had been referred. Throughout May 1977, plaintiff signed corporate checks prepared and presented to him by Mary Powell. On May 27, 1977, proceedings under Chapter 11 of the Bankruptcy Act were formally authorized by the USRL board of directors. On June 8, plaintiff signed bankruptcy documents setting forth USRL's assets and liabilities, including FICA taxes due. The documents also included statements by plaintiff that he had been running the corporation since May.

Although Douglas Scott's role in the corporation diminished substantially after May, USRL continued to pay its bills through August 25, 1977. Finally, in September 1977, USRL initiated Chapter 7 bankruptcy proceedings.

The record shows USRL had over $13,000 in the bank on June 8 and was credited with an additional $37,000 during the remainder of the month. USRL used this money, however, to pay its creditors and not to extinguish its tax liability for the second quarter of 1977. Plaintiff was subsequently assessed the 100% penalty for failure to pay the tax and, after making a token payment, brought this suit for a refund.

## DISCUSSION

Sections 3102(a) and 3402(a) of the Internal Revenue Code require an employer to withhold income tax and FICA tax from its employees' wages. The tax collected by the employer is then held in trust for the United States. I.R.C. § 7501(a). The Code further provides that an employee is automatically credited for the amount of income taxes withheld regardless of whether the employer turns the funds over to the government. I.R.C. §§ 1462, 3102(a). Accordingly, "[i]f the withheld tax cannot be collected from the employer corporation it may be collected in the form of a 100-percent penalty from the officers responsible for the failure to pay it over." *Bolding v. United States*, 215 Ct.Cl. 148, 158, 565 F.2d 663, 669 (1977). *See*, I.R.C. §§ 6671, 6672.

Section 6672 of the I.R.C. provides, in pertinent part:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Section 6671 indicates that the "person" referred to in Section 6672 includes a responsible corporate officer:

> (b) *Person defined.* The term 'person' as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

These provisions are designed to ensure that the tax owed the government is paid. By imposing a penalty on those responsible for the corporation's failure to pay its taxes, the government is able to recoup taxes that it otherwise would not be able to collect. *Bolding,* 215 Ct.Cl. 148, 565 F.2d 663. The penalty can be assessed, however, only against those individuals who are (1) responsible for the collection and payment of the tax, and (2) who willfully fail to carry out their duty. *Id.*

### A. *Responsibility Determination*

■ Determining who is a responsible person within the ambit of § 6672 requires a close examination of the unique facts of each case. *See Bauer v. United States,* 211 Ct.Cl. 276, 543 F.2d 142 (1976). Generally, those persons with ultimate authority over the disposition of funds are responsible for the corporation's failure to pay taxes it owes. *White v. United States,* 178 Ct.Cl. 765, 372 F.2d 513 (1967). Therefore, "[a]ny corporate officer or employee with the power and authority to 'avoid the default' or to direct the payment of the taxes is a responsible person within the meaning of section 6672. *White v. United States,* 178 Ct.Cl. 765, 771, 372 F.2d 513, 516 (1967)." *Feist v. United States,* 221 Ct.Cl. 531, 539, 607 F.2d 954, 960 (1979). Furthermore, there can be more than one "responsible officer" at a corporation. *White,* 178 Ct.Cl. at 775, 372 F.2d at 516. Section 6672 does not confine liability for unpaid taxes to the single officer with the greatest authority over corporate affairs. *Bolding,* 215 Ct.Cl. at 161, 565 F.2d at 671; *Burack v. United States,* 198 Ct.Cl. 855, 869, 461 F.2d 1282, 1291 (1972).

■ Plaintiff's contention that he was merely an investor in the corporation who held only cosmetic positions and titles is bereft of merit. As treasurer and comptroller of the corporation, plaintiff was responsible for supervising the financial affairs of the corporation. This included the responsibility to see that withheld taxes were paid to the government and not used for private business purposes. *See, e.g., Feist,* 221 Ct.Cl. at 540, 607 F.2d at 960. Thus, plaintiff's attempt to downgrade his role as a corporate officer and director must fail. The record clearly reveals that during the period in question, plaintiff was substantially involved in the daily operation of USRL. Indeed, Douglas Scott, USRL's president, was physically absent for extended periods of time from April through July. (E. Powell Transcript ["Tr."] at 41, 102.) Moreover, USRL's other two officers, Holst and Owens, left the corporation in May. (M. Powell Tr. at 203, 221.) Accordingly, from May onward, plaintiff was the dominant officer directing the financial affairs of the corporation.

Plaintiff's role in USRL became evident when bankruptcy proceedings were initiated on May 27, 1977. Plaintiff, as comptroller and director, signed the minutes of the board of directors' meeting wherein initiation of Chapter 11 proceedings was approved. (E. Powell Tr. at 47–48; DX–4.) Moreover, plaintiff continued to sign bankruptcy documents from May 27, 1977 through August 1977, when Chapter 7 proceedings were initiated. Included in bankruptcy documents signed by plaintiff on June 8, 1977 were statements that plaintiff had replaced Scott as manager of USRL. In addition, the documents indicate that as a result of his concern that Scott may have been taking money from USRL, plaintiff assumed control of the corporation on May 1, 1977. (DX–7.) Finally, plaintiff, as the only officer present, signed bankruptcy documents on September 9, 1977 stating that USRL had continued operating from July 1 through August 25. (E. Powell Tr. at 104–108.) All of the above ineluctably

evinces that plaintiff was a "responsible" person under the statute.

■ Plaintiff's argument that Mary Powell was the responsible officer operating the corporation during the period in question is unavailing. Plaintiff argues that Mary Powell played an important role in the business affairs of the corporation and that she in fact decided which creditors to pay from the money available. Section 6672, however, does not confine liability to the single officer with the greatest control over corporate affairs. *See Bolding*, 215 Ct.Cl. at 161, 565 F.2d at 671; *White*, 178 Ct.Cl. at 775, 372 F.2d at 516. Accordingly, even if Mary Powell was adjudged to be a responsible person, plaintiff still would remain accountable for his failure to collect and pay taxes due the government by virtue of his extensive involvement in USRL.

In sum, the critical test is whether plaintiff had the authority to order taxes paid. *See White*, 178 Ct.Cl. 765, 372 F.2d 513. The evidence is clear that creditors were paid during the period in question and that plaintiff had final authority and responsibility to decide which creditors to pay. (M. Powell Tr. at 233, 239, 244.) Indeed, most of the checks written during May, June and July were signed solely by plaintiff. (DX–2, 15.) Hence, we find plaintiff to be a person responsible for paying withheld taxes due the government for the second quarter of 1977.

## B. *Willful Failure to Pay*

■ In addition to being a "responsible person", one must also willfully fail to pay taxes to be liable under § 6672. *Bolding*, 215 Ct.Cl. at 162, 565 F.2d at 672. A failure to pay taxes is deemed willful if it is "a deliberate choice voluntarily, consciously and intentionally made to pay other creditors instead of paying the Government, and . . . it is not necessary that there be present an intent to defraud or to deprive the United States of the taxes due, nor need bad motives or wicked design be proved in order to constitute willfulness." *White v. United States*, 178 Ct.Cl. at 778–79, 372 F.2d at 521. Therefore, willfulness may be

shown by proving that the responsible person used available corporate money for other business purposes. *See Feist*, 221 Ct.Cl. at 541, 607 F.2d at 961. Moreover, willful conduct may also include reckless disregard for obvious or known risks. *Bolding*, 215 Ct.Cl. at 162, 565 F.2d at 672. Thus, willfulness may be shown by proving that the "responsible person recklessly disregarded his duty to collect, account for, and pay over the trust fund taxes or [that he] ignored an obvious and known risk that the trust funds might not be remitted." *Feist*, 221 Ct.Cl. at 542, 607 F.2d at 961 (citation omitted).

■ Plaintiff alleges an absence of willfulness because he was unaware that federal withholding taxes had not been paid when he signed checks paying other creditors. (E. Powell Tr. at 60.) The record, however, contains little support for plaintiff's claim that he lacked knowledge of the unpaid taxes. On the contrary, the record strongly suggests that plaintiff paid other creditors with the knowledge that outstanding taxes were due. Indeed, plaintiff admits signing bankruptcy documents dated June 8, 1977 that list taxes due the Internal Revenue Service ("IRS"). (E. Powell Tr. at 55.) Moreover, Mary Powell testified that she informed plaintiff, within a short time of the date deposits were due for outstanding taxes, that tax payments were not being made. (M. Powell Tr. at 194–195.) Therefore, at the very least, plaintiff acted in reckless disregard of his duty to pay over the trust fund taxes. *See Feist*, 221 Ct.Cl. at 542, 607 F.2d at 961.

■ Plaintiff further argues that even if Mary Powell discussed tax deposits with him, his subsequent payment of other creditors was not willful because he did not know if Mary Powell paid the taxes later. Such an argument is devoid of merit. A responsible officer with knowledge that there is a problem with the payment of taxes cannot "immunize himself from the consequences of his actions by wearing blinders which will shut out all knowledge of the liability for and the nonpayment of

its withholding taxes." *Bolding*, 215 Ct.Cl. at 166, 565 F.2d at 674. Thus, by not ensuring that the taxes were paid, plaintiff ignored an obvious risk that the funds might not be remitted to the I.R.S. *See Feist*, 221 Ct.Cl. at 542, 607 F.2d at 961. Accordingly, this court finds that plaintiff's nonpayment was willful within the terms of IRC § 6672.

Finally, plaintiff argues that, even if he knew on June 8 that employment taxes were due, he would be liable only to the extent of the company's liquid assets on that date. Plaintiff's argument is based on *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). In *Slodov*, the individual assumed control of three corporations at a time when a delinquency existed for unpaid federal taxes withheld from employees' wages and when the corporation had no liquid assets to pay overdue taxes. The Court held that a responsible person is liable for outstanding payroll tax liability accrued as of the time he undertakes the duties that make him a responsible person to the extent of the corporation's liquid assets on that date. *Slodov*, 436 U.S. at 249–250, 98 S.Ct. at 1786. To hold otherwise, the court reasoned, would hinder the IRS's collection efforts as few prospective management officials or purchasers would assume control of a financially troubled corporation knowing they could be potentially liable for unpaid taxes accrued prior to the date they assumed control. *Slodov*, 436 U.S. at 252–53, 98 S.Ct. at 1787–88.

■ The instant case, however, is clearly distinguishable on its facts. Additionally, the policy underlying the *Slodov* decision is inapplicable to the existing situation. The record indicates that plaintiff had assumed control of USRL by at least June 8, 1977. In fact, certain evidence shows plaintiff supervising the day-to-day affairs of the corporation as early as May 1. (DX 7.) As of June 8, USRL had over $13,000 in its account at the First National Bank of Roswell. (DX–2(a)(6).) Subsequent to June 8, however, USRL made additional deposits of over $37,000 to its bank account. (DX–

2(a)(b).) Thus, although USRL had available funds on hand to extinguish its tax liability, these funds were used to pay off other creditors. Therefore, plaintiff remains liable under § 6672.

## CONCLUSION

Plaintiff, Edgar L. Powell, was a responsible person within the meaning of IRC §§ 6671(b) and 6672 who willfully failed to pay over taxes due the government. Accordingly, defendant is entitled to recover on its counterclaim and judgment shall be entered for defendant in the amount of $22,157.52, together with interest as provided by law. Plaintiff's petition shall be dismissed by the Clerk.